**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION, LEXINGTON**
**CRIMINAL ACTION NO.: 5:26-CR-61-KKC-MAS**
***FILED ELECTRONICALLY***

**UNITED STATES OF AMERICA,**

**v.**

**MARK COULTER** **DEFENDANT**

---

**SENTENCING MEMORANDUM**

---

Comes the Defendant, Mark Coulter, through the undersigned counsel, respectfully submits this Sentencing Memorandum to assist the Court in fashioning a proper sentence that is "sufficient but not greater than necessary," consistent with the purposes of 18 U.S.C. § 3553(a).

## INTRODUCTION

Mark is before the Court after pleading guilty to the sole charge in the June 3, 2026, Information. Specifically, Mark admitted his guilt to committing the offense of Online Enticement of a Minor to Engage in Criminal Sexual Conduct. Mark acknowledged in open court that he used a computer to entice a single victim (aged 16) to have sexual intercourse. His efforts resulted in a single instance of sexual intercourse with the victim, N. J., which he and N.J. both filmed with their phones. However, Mark sent his video to N. J. via Snapchat.

The United States Probation Office ("USPO") accurately calculated Mark's offense level to be 42 (360 months-life in prison) and a Criminal History Level of I. Mark's offense level accounts for a three-level reduction for accepting responsibility. The mandatory minimum sentence associated with his conviction is 10 years. *See* 18 U.S.C. §2422(b).

The sentencing judge should "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996). "Underlying this tradition is the principle that 'the punishment should fit the offender and not merely the crime.'" *Pepper v. United States*, 562 U.S. 476, 487-88 (2011) (quoting *Williams v. New York*, 337 U.S. 241, 247 (1949)). The Sentencing Guidelines perform a limited function in achieving this goal. They are not mandatory but advisory. *United States v. Booker*, 543 U.S. 220 (2005). Instead, at the sentencing, the Court "shall impose a sentence sufficient, but not greater than necessary, to comply with the need for the sentence imposed: 1) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; 2) to afford adequate deterrence to criminal conduct; 3) to protect the public from further crimes of the defendant; and, 4) to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner." 18 USC 3553(a)(2)(A-D). Also, the Court shall also consider "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 USC 3553(a)(1).

After applying the factors enumerated in 18 U.S.C. § 3553(a), the Court has reason to sentence Mark at or near the mandatory minimum imposed under 18 U.S.C. §2422(b) followed by a rigorous and lengthy period of supervised release. The USPO found Mark has a limited ability to pay any fines or restitution. Finally, the Court should make a recommendation to the Bureau of Prisons ("BOP") that Mark should be incarcerated at a minimum-security prison.

## ARGUMENT

### I. UNRESOLVED OBJECTIONS TO PSR

There are no unresolved objections requiring adjudication at sentencing.

## II. THE COURT IS AUTHORIZED TO DEPART FROM THE GUIDELINE RANGE.

"In *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), the Supreme Court invalidated the mandatory use of the Sentencing Guidelines and held they are now 'effectively advisory.'" *United States v. Collington*, 461 F.3d 805, 807 (6th Cir. 2006). The Sixth Circuit has held that "[o]nce the appropriate advisory Guideline range is calculated, the district court throws this ingredient into the section 3553(a) mix." *Collington*, 461 F.3d at 807 (*United States v. McBride,* 434 F.3d 470, 476 (6th Cir. 2006)). Section 3553(a) instructs a district court to impose "a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in [section 3553(a)(2)]." 18 U.S.C. § 3553(a). "Because the Sentencing Guidelines are now advisory, a district court is permitted to vary from those guidelines in order to impose a sentence which fits the mandate of section 3553(a)." *Collington*, 461 F.3d at 808 (internal citations omitted). Although the Sixth Circuit has held that a sentence within the guidelines is presumptively reasonable, "this says nothing about sentences outside the advisory range." *Id.* The reasonableness of such sentences is viewed "in light of the 3553(a) factors." *Id.*

In *Collington*, the Sixth Circuit found a district court's downward variance to a sentence 36% below the otherwise applicable guideline range was reasonable. *Id.* at 808 ("The district court, in this case, varied downward from the guideline range of 188 to 235 months to give Collington a sentence of 120 months."). The underlying case resulted in Collington pleading guilty to possession with intent to distribute more than fifty grams of crack cocaine, felon in possession of a firearm, and possession of a machine gun. *Id.* at 806. The defendant's criminal history was "IV". *Id*. In application of the 3553(a) factors, the district court focused on the defendant's "history" and "his desire to reform." *Id.* at 809. The district court's analysis led it to conclude that a "120-month sentence is sufficient enough to reflect the crimes

committed while allowing for the possibility that Collington may reform and after his release from prison, when he is in his mid-thirties, may go on to a productive life in society." *Id.*at 809. The Sixth Circuit affirmed this sentence, finding this analysis to be "sound." *Id.*

Departures below guideline ranges are recognized in sexual offenses, like the one Mark admitted he committed. *United States v. Stall*, 581 F.3d 276, 277–78 (6th Cir. 2009) (affirming sentence of "one day of incarceration and a ten-year period of supervised release" for conviction of two counts of possession of child pornography carrying a guideline range of "57–71 months of imprisonment"); *United States v. Jamerson*, 536 F. App'x 606, 611 (6th Cir. 2013) ("The sentence imposed by the district court, which departed downward to the 60–month mandatory minimum from the advisory guideline range of 108 to 135 months, is reasonable.").

The USPO determined Mark clearly demonstrated acceptance of responsibility. The PSR found Mark timely provided complete information to the government concerning his personal involvement in the offense and timely notified authorities of his intention to plead guilty. Under USSG §3E.1.1(a), acceptance of responsibility is a three-level reduction of the offense level. The PSR calculates Mark's guideline range to be between 360 months and life imprisonment, despite Mark's three-level reduction for his acceptance of responsibility. However, the statutorily required minimum sentence of 10 years is significantly less than the minimum of the guideline range after applying the three-level reduction. The Court is authorized to depart from the applicable guideline range to a sentence closer to the mandatory minimum of the convicted offense.

## III. APPLICATION OF THE STATUTORY SENTENCING FACTORS SUGGEST A DEPARTURE IS REASONABLE.

18 U.S.C. §3553(a) establishes seven factors that shall be considered in imposing any sentence:

1. The nature and circumstances of the offense and the history and characteristics of the defendant;

2. The need for the sentence in imposed (A) to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes; (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3. The kinds of sentences available;

4. The kinds of sentences in the sentencing range established by the USSG;

5. Any pertinent policy statement established by the Sentencing Commission;

6. The need to avoid unwarranted sentencing disparities among defendants with similar records or who have been found guilty of similar conduct; and,

7. The need to provide restitution to any victims of the offense.

The factors require an individualized assessment by the Court of the circumstances involved, which are unique in each case. Several are applicable and favorable here.

**A. The History and Characteristics of Mark are Overwhelmingly Positive.**

As a thirty-six-year-old, college educated, first-time offender, Mark is a defendant who represents the hope that incarceration can be rehabilitative. Before his arrest, Mark pursued a college education before finding success in the oil industry and starting a family. Mark was able to provide a stable life for his young family. All the while, Mark developed a reputation as compassionate neighbor, father, and husband who regularly contributed to his church and its community. Mark has no criminal history at the federal or state level.

Mark felt deeply remorseful following his transgression. Mark voluntarily ceased communications with N.J. Mark, through counsel, engaged in plea negotiations with the Government relatively quickly and filed a motion for re-arraignment almost four months into this

proceeding. Mark's acceptance of responsibility is sincere. See, **Exhibit** A. The guilt he feels is unequivocal.

Mark's neighbors, church community, and family offered letters in support of Mark for the Court's consideration. *See*, **Exhibit B-I**. These letters reflect Mark's remorse, his family's and neighbors' forgiveness, and the isolation of the underlying criminal conduct in an otherwise productive and family-focused life. Moreover, these letters suggest that, when Mark is released, he will be received by a law-abiding community that misses him and supports him and his family. Taken together, the Court should find that the history and characteristics of Mark support a significant departure from the applicable sentencing guideline range towards the mandatory minimum of his charged offense.

**B. Nature and Circumstances of Offense.**

The offense for which Mark was convicted concerns a single instance of sexual intercourse with a victim aged 16 at the time of the crime (now 17). It carries a mandatory minimum sentence of ten years.

The sexual intercourse followed a series of online exchanges, ranging from expressions of mutual affection to expressed desire for sexual intercourse. The victim and Mark each videoed the intercourse, and Mark shared his video with the victim through Snapchat. There is no suggestion Mark disseminated the video further.

The victim and Mark previously knew each other through Mark's family. There is no suggestion Mark has engaged or has attempted to engage in any similar conduct with any other minor before his interaction with N. J.

The offense is serious. The result of Mark's offense permanently and negatively affected N.J. and her family. Likewise, Mark knows his offense has impacted his family—particularly his

wife and children—forever. Mark knows his offense was the epitome of selfishness. Mark knows his offense was a desertion of all the values he has sought to demonstrate to his children.

### C. Mark's sentence need not be harsh to deter him from future crimes, protect the public, or promote respect for the law.

While a period of incarceration is warranted and just, an excessive prison term in Mark's circumstance will no greater deter future criminal conduct or protect the public than a more lenient sentence. Mark's crime was motivated by selfishness and lack of judgment. It is not reflective of a greater threat to the community at large. A period of incarceration approximating his sentencing guideline range is unnecessary to protect against or curb Mark's motivation in committing the offense.

Mark has demonstrated a respect for the law. Mark cooperated with law enforcement and promptly admitted to the offense conduct. Mark has had no issues since his detention. Since committing the crime and confessing to his wife, Mark has reaffirmed his commitment to his wife and family and their quiet, church-going family life. Mark intends to rejoin his wife upon release and devote his attention to their church community. The letters offered in support of Mark demonstrate that this community stands ready to receive Mark and that this community is focused on family values. A period of incarceration approximating his sentencing guideline range is unnecessary to deter him from future criminal conduct and to learn respect for the law. Instead, a sentence at or near the mandatory minimum of his convicted offense is sufficient to deter him from engaging in any further criminal activity going forward.

Additionally, empirical data suggests that Mark fits within a demographic that is relatively unlikely to recidivate. Research by the United States Sentencing Commission reveals that Mark, an educated, young man with no criminal history, fits within a demographic with relatively low

recidivism rates.[1] Offenders with no criminal history points, like Mark, are the least likely category of offenders to recidivate.[2] Moreover, offenders who received the benefit of education prior to their arrest have lower recidivism rates than those that do not. The effect of education on recidivism rate is especially strong for offenders that studied at college. Offenders that attended some college, like Mark, had the second lowest recidivism rates compared to offenders that lacked a high school diploma, had obtained a high school diploma but did not attend college, and had graduated college. The latter category had the lowest recidivism rate. Because Mark has obtained some college and has no criminal history, Mark is statistically less likely to commit future crimes. Accordingly, Mark's sentence needs not be harsh for him to avoid unlawful behavior.

In Mark's case, an excessive sentence negatively affects his ability to rehabilitate and readjust in a prosocial environment following his release. Mark is a father to two young children, ages three and six, who are both at risk of being adversely affected by an excessive sentence given to their father. Empirical research demonstrates that children with incarcerated parents show greater difficulties in their physical, cognitive, and socioemotional development, as well as in their school life, living conditions, and a greater number of psychosocial risks (e.g., substance abuse, delinquency, and violent behavior).[3] In children aged zero to six years old, parental incarceration is associated with greater sleep and eating behaviors problems, food insecurity, and lower cognitive skills and/or academic performance.[4] Mark's family has already suffered because of Mark's actions. While Mark and his family are not the victims of his crime, the impact of an overly

---

[1] "The Effects of Aging on Recidivism Among Federal Offenders," United States Sentencing Commission, *available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf (August 18, 2026).

[2] *Id.*at 23. ("Fully consistent with its previous recidivism studies, the Commission's present study found that recidivism rates are most closely correlated with total criminal history points."

[3] Alicia Herreros-Fraile et al., *Parental Incarceration, Development, and Well-Being: A Developmental Systematic Review*, 20 INT'L J. ENV'T RES. PUB. HEALTH 3143 (2023).

[4] *Id*.

long sentence on his young children is relevant to Mark's ability to rehabilitate and readjust to a prosocial life. Being an active father to his children, which is how the support letters attached hereto describe Mark, is more likely to tether Mark to a law-abiding, prosocial life. Serving the mandatory minimum of his sentence will still allow Mark to participate as a father in his children's lives, who would then be aged thirteen and sixteen. However, in the event Mark serves a sentence at or near that which is proposed by the applicable guideline range, Mark's role in his children's lives will be diminished. If he were to serve the low-end of the applicable guideline range, his children would be thirty-six and thirty-three. His obligations and duties as a father that give him purpose and cause to rehabilitate will generally be concluded

## IV. THIS COURT SHOULD NOT IMPOSE A FINE.

"The court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." USSG § 5E1.2. The defendant has the burden to show that he cannot pay a fine. *United States v. Ukomadu*, 236 F.3d 333, 340 (6th Cir. 2001). The PSR determined that Mark, "has a limited ability to pay a fine." Mark has no illegal gains from which he must be deprived.

## V. THE COURT SHOULD MAKE A RECOMMENDATION FOR BOP DESIGNATION.

Mark respectfully requests that the Judgment specifically state that he is entitled to credit for time served. For the reasons stated herein, the Court should recommend to the BOP that Mark be placed in a minimum-security facility as close as possible to his family's home in Big Spring, Texas to maximize his family visits and family ties during the period of his incarceration.

## CONCLUSION

For the reasons stated herein, the Court should impose a sentence at or near the mandatory minimum of his convicted offense (120 months). The Court should depart from the guideline range

otherwise applicable (360 months-life). Mark's ability to readjust to society following his term of imprisonment is threatened by an extraordinarily long sentence and hefty fines and penalties, and a sentence in excess of the mandatory minimum is unnecessary to deter Mark from future crimes.

Respectfully Submitted,

**CROSBIE EATON OLESON PLLC**

_/s/ Eric C. Eaton______________________
Eric C. Eaton
CROSBIE EATON OLESON PLLC
201 E. Main Street, Suite 800
Lexington, Kentucky 40507
859-287-2400
eric.eaton@ceo-lawyers.com
ATTORNEY FOR DEFENDANT

**CERTIFICATE OF SERVICE**

I hereby certify that on September 8, 2026, a true and accurate copy of the foregoing and its attachments was served electronically with the Clerk of the Court by using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

_/s/ Eric C. Eaton______________________
ATTORNEY FOR DEFENDANT